RECEIVED

AUG 02 2011

AT 8:30_____M
WILLIAM T. WALSH
CLERK

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **Criminal No.** 11-520 (JBS) |
| | * | |
| v. | * | **18 U.S.C § 371;** |
| | * | **16 U.S.C. §§ 3372(d), 3373(d)(3)(A)(ii);** |
| **THOMAS REEVES,** | * | **16 U.S.C. §§ 3372(a)(2)(A), 3373(d)(1)(B);** |
| **TODD REEVES,** | * | **18 U.S.C. § 1519;** |
| **RENEE REEVES,** | * | **18 U.S.C. § 1505;** |
| **SHELLROCK, LLC** | * | **18 U.S.C. § 2** |
|     **d/b/a REEVES BROTHERS,** | * | |
| **KENNETH W. BAILEY,** | * | |
| **MARK BRYAN,** | * | |
| **PAMELA MELONEY, and** | * | |
| **HARBOR HOUSE, INC.** | * | |

# I N D I C T M E N T

The Grand Jury in and for the District of New Jersey, sitting at Camden, charges, at all times relevant to this Indictment:

## The Defendants

1.     Defendant THOMAS REEVES was a United States citizen residing in or near Port Norris, New Jersey.  THOMAS REEVES was a licensed commercial shellfish harvester authorized to use his vessels to harvest oysters from New Jersey waters in the Delaware Bay. Defendant THOMAS REEVES was one of the owners and operators of the company SHELLROCK, LLC, d/b/a REEVES BROTHERS.

2.     Defendant TODD REEVES was a United States citizen residing in or near Port Norris, New Jersey.  TODD REEVES was a licensed commercial shellfish harvester authorized to use his vessels to harvest oysters from New Jersey waters in the Delaware Bay.  Defendant

TODD REEVES was one of the owners and operators of the company SHELLROCK, LLC, d/b/a REEVES BROTHERS.

3.      Defendant RENEE REEVES was a United States citizen residing in or near Port Norris, New Jersey. RENEE REEVES worked at the company SHELLROCK, LLC, d/b/a REEVES BROTHERS.

4.      Defendant SHELLROCK, LLC, d/b/a REEVES BROTHERS, was a company formed under the laws of New Jersey, with its principal place of business in Port Norris, New Jersey. SHELLROCK, LLC, d/b/a REEVES BROTHERS was owned and operated by THOMAS REEVES and TODD REEVES. The defendants THOMAS REEVES and TODD REEVES and their company did business utilizing the name REEVES BROTHERS. SHELLROCK, LLC, d/b/a REEVES BROTHERS ("REEVES BROTHERS"), was an oyster dealer authorized to buy and sell oysters under New Jersey law.

5.      Defendant KENNETH W. BAILEY, ("BAILEY"), was a United States citizen residing in or near Heislerville, New Jersey. BAILEY was a licensed commercial shellfish harvester, authorized to use his vessels to harvest oysters from New Jersey waters in the Delaware Bay. BAILEY also operated as a New Jersey oyster dealer under a New Jersey oyster dealer license issued to his wife, Sharon Bailey. BAILEY did business selling oysters under his own name and the business name "Conks "R" Us".

6.      Defendant MARK BRYAN, ("BRYAN") was a United States citizen residing in or near New Market, Delaware. BRYAN was an owner and operator of a business called HARBOR HOUSE, INC.

- 2 -

7.     Defendant PAMELA MELONEY, ("MELONEY") was a United State citizen residing in or near Secretary, MD.  MELONEY was an employee at HARBOR HOUSE, INC. involved in creating and maintaining certain records.

8.     Defendant HARBOR HOUSE, INC., ("HARBOR HOUSE"), was a company formed under the laws of Delaware, with its principal place of business in Seaford, Delaware. BRYAN was one of the owners and operators of HARBOR HOUSE.  HARBOR HOUSE was in the business of buying and selling fish and wildlife, including oysters.

**Relevant Federal and State Law**

9.     The state of New Jersey regulates the commercial catch of oysters from New Jersey waters. N.J. Stat. Ann. § 50:1-5.  New Jersey designates certain areas of the Delaware Bay, called public beds or natural seed bed areas, for oyster fishing by any person using a vessel possessing the necessary licenses to fish in these areas.  New Jersey law prohibits the taking of oysters in violation of New Jersey law and regulations. N.J. Stat. Ann. §§ 50:3-8; 50:3-16.13; 50:3-8; 50:3-16-14; and 50:3-16-21.

10.     New Jersey regulations allow oysters to be harvested from public seed beds only during certain times of the year, and according to terms and conditions set by the New Jersey Department of Environmental Protection, Division of Fish and Wildlife. N.J. Admin. Code § 7:25A-1.9. Each year under these authorities, the New Jersey Division of Fish and Wildlife set terms and conditions to regulate the harvest which specified the season, limited how many oysters could be harvested from the seed beds, and limited how many oysters each licensed harvester could take in that year from those beds.  The yearly conditions set by New Jersey also required that a harvester report his oyster harvest activity during this season in all of the following ways: by calling to a designated number at the Fish and Wildlife Division prior to

- 3 -

harvesting in order to report where the vessel intends to harvest oysters on that day; by contacting the Fish and Wildlife Division at the same number or by VHF radio prior to offloading oysters to report the total number of bushels the vessel caught that day; and by requiring the fisherman to complete a weekly oyster harvest log identifying the harvester, date, and quantity of oysters harvested, and submit this weekly log to the State. New Jersey regulations also require that an oyster harvester notify the Fish and Wildlife Division of a harvester's intent to work any leased oyster grounds during the bay direct market season. N.J. Admin. Code § 7:25A-1.9 (n).

11.     New Jersey regulations require that a person land his oysters at an oyster dealer registered with the State. N.J. Admin. Code § 7:25A-4.4. New Jersey oyster dealers are required to maintain a record of their purchases and landings of oysters from fishermen, and are required to submit these records to the State. N.J. Admin. Code § 7:25A-4.5. These records include the date, the vessel harvesting, and the number of bushels harvested, among other information.

12.     New Jersey law requires that a commercial purchaser and shipper of shellfish maintain a record of shellfish purchases, including the date or purchase, the person or company from who the purchase was made, and the quantity of shellfish that was purchased. N.J. Stat. Ann. § 8:13-1.1. These records are subject to inspection by the relevant state agencies.

13.     Delaware law requires that a commercial purchaser and shipper of shellfish maintain a record of shellfish purchases, including the date or purchase, the person or company from who the purchase was made, and the quantity of shellfish that was purchased. 7 Del. Admin. Code §7402. 4.4.12.1. These records are subject to inspection by the relevant state agencies.

14.     Federal regulations promulgated by the Food and Drug Administration ("FDA") require those who process, handle, store, shuck, pack, label, unload dockside, or hold oysters to maintain records of the harvest date, harvest location, quantity harvested, and harvester. 21 C.F.R. § 123.28. These records are subject to inspection by the FDA.

15.     The Lacey Act, Title 16, United States Code, Section 3371 *et seq.*, (hereinafter "the Lacey Act"), makes it unlawful for a person to make or submit any false record, account, or label for, or any false identification of, any fish or wildlife that has been, or is intended to be, transported, sold, purchased, or received in interstate commerce. Title 16, United States Code, Section 3372(d). The Lacey Act also makes it unlawful for a person to transport, sell, receive, acquire, or purchase in interstate commerce any fish or wildlife that is taken, possessed, transported or sold in violation of any law or regulation of any state. Title 16, United States Code, Section 3372(a)(2).

## COUNT ONE

16.     The allegations contained above in Paragraphs 1 through 15 of the Indictment are hereby re-alleged and incorporated by reference herein.

17.     Beginning on a date unknown, but not later than on or about April 19, 2004, and continuing through on or about November 9, 2007, in the District of New Jersey and elsewhere, the defendants,

**THOMAS REEVES,**
**TODD REEVES,**
**RENEE REEVES,**
**SHELLROCK, LLC. d/b/a REEVES BROTHERS,**
**MARK BRYAN,**
**PAMELA MELONEY, and**
**HARBOR HOUSE INC.,**

did knowingly, willfully, and unlawfully combine, conspire, confederate and agree with each other, and with others both known and unknown to the Grand Jury, to commit offenses against the laws of the United States, namely to:

a.  knowingly make and submit, and cause to be made and submitted, a false record, account, and label for, and false identification of fish or wildlife, specifically oysters, that were and were intended to be transported in interstate commerce, having a market value greater than $350, and that involved the sale and purchase, the offer of sale and purchase, and the intent to sell and purchase fish or wildlife, in violation of Title 16, United States Code, Sections 3372(d) and 3373(d)(3)(A);

b.  knowingly engage in conduct that involved the sale and purchase of, the offer of sale and purchase of, and the intent to sell and purchase fish or wildlife, specifically oysters, with a market value in excess of $350, and did knowingly transport, sell, receive, acquire, and purchase said oysters in interstate commerce, knowing that said fish or wildlife were taken, possessed, and transported in violation of and in a manner unlawful under the laws and regulations of New Jersey, specifically that is, the oysters were not reported as required, and were taken in amounts in excess of the amount authorized to be harvested by the defendants, in violation of Title 16, United States Code, Sections 3372(a)(2)(A) and 3373(d)(1)(B);

c.  knowingly alter, destroy, mutilate, conceal, cover up, falsify, and make false entries in a record with the intent to impede, obstruct, and influence the investigation and proper administration of a matter, and in relation to and in

contemplation of such a matter, within the jurisdiction of a department or agency of the United States, in violation of Title 18, United States Code Section 1519.

d.     corruptly influence, obstruct and impede, and endeavor to influence, obstruct, and impede the due and proper administration of the law under which a pending proceeding was being had before an agency of the United States, to wit, the National Oceanic and Atmospheric Administration ("NOAA") of the Department of Commerce, in violation of Title 18, United States Code Section 1505.

### Manner and Means of the Conspiracy

18.     Among the means and methods employed by the defendants, and their co-conspirators, in order to carry out the conspiracy and to effect its unlawful objects, are those set forth in paragraphs 19 to 25 below.

19.     THOMAS REEVES and TODD REEVES would use vessels to harvest oysters from New Jersey waters in 2004, 2005, 2006, and 2007. They would harvest these oysters from areas designated as public seed beds that New Jersey made available for harvest to licensed oyster fishermen, usually from April until November each year, according to certain terms and conditions it set each year. THOMAS REEVES and TODD REEVES operated the company REEVES BROTHERS as an oyster dealer to land their oyster harvest.

20.     In each year, THOMAS REEVES and TODD REEVES would harvest significantly more oysters from these public seed beds than they were allowed under the applicable quotas set by New Jersey. THOMAS AND TODD REEVES's vessels took approximately 40 percent more than the quota allowed them to take in 2004, approximately 25 percent more than they were allowed in 2005, approximately 90 percent more than they were

allowed in 2006, and approximately 40 percent more than they were allowed in 2007. The fair market retail value of their overharvested and falsely reported oysters was well over $600,000.

21.    To help conceal their significant overharvest each year, they would also falsely report to New Jersey that they were using their vessels to harvest fewer oysters on their fishing trips than they actually were. They would accomplish this false reporting by calling in to New Jersey a false number of bushels harvested for fishing trips, and by completing required forms that falsely stated they were taking fewer oysters with their vessels on certain days than they really were, and by omitting certain days of harvests from the reports.

22.    THOMAS REEVES and TODD REEVES would, with the assistance of RENEE REEVES, operate REEVES BROTHERS oyster dealer operations to help conceal their overharvest and false reporting of oysters to New Jersey. REEVES BROTHERS would keep false records of their oyster dealer weekly reports, and of the oysters received and shipped out that THOMAS and TODD REEVES's vessels landed. These REEVES BROTHERS records were required by state and federal law. REEVES BROTHERS would record that the vessels operated by THOMAS and TODD REEVES landed fewer oysters and that REEVES BROTHERS shipped out fewer oysters than they actually did.

23.    THOMAS REEVES and TODD REEVES through REEVES BROTHERS sold oysters to HARBOR HOUSE. REEVES BROTHERS would provide false invoices and copies of certain false REEVES BROTHERS records to HARBOR HOUSE. The false invoices would indicate they were selling fewer oysters to HARBOR HOUSE than they actually sold. HARBOR HOUSE's owner, MARK BRYAN, and its bookkeeper, PAMELA MELONEY, would process the paperwork for these sales and make payment to REEVES BROTHERS for greater quantities of oysters than the REEVES BROTHERS invoices indicated.

24.     To help hide and facilitate THOMAS REEVES's and TODD REEVES's overharvest of oysters, MELONEY, at the direction and with the assistance of BRYAN, would generate false entries in HARBOR HOUSE's record of oyster purchases, and/or omit entries in this document for purchases it made. This record was required to be kept by Delaware and Federal law.  MELONEY and BRYAN would coordinate HARBOR HOUSE's false entries in its oyster record with the false reports prepared and provided by THOMAS REEVES, TODD REEVES, and RENEE REEVES.

25.     In order to help prevent the discovery of their and the Reeves's actions, MELONEY and BRYAN provided to law enforcement officers records of the REEVES BROTHERS sales to HARBOR HOUSE that they knew to be false.  They also presented these records as having come from HARBOR HOUSE's own historical files, when in truth and in fact they were not.

### Overt Acts of the Conspiracy

26.     In furtherance of the conspiracy and to effect the objects of the conspiracy, at least one of the co-conspirators committed or caused to be committed, within the District of New Jersey and elsewhere, the following overt acts, among others:

Overt Act 1:     On or about April 13, 2004, THOMAS REEVES executed a document acknowledging the terms and conditions and individual harvest allotment of oysters for the 2004 direct market harvest season in the Delaware Bay.

Overt Act 2:     On or about April 13, 2004, TODD REEVES executed a document acknowledging the terms and conditions and individual harvest allotment of oysters for the 2004 direct market harvest season in the Delaware Bay.

Overt Act 3:   REEVES BROTHERS applied for and received a oyster dealer license from the State of New Jersey for the period August 2003 to August 2004.

Overt Act 4:   For the harvest of oysters occurring on approximately 36 occasions from on or about April 16, 2004, through September 21, 2004, each occasion being an overt act, daily call-ins to New Jersey Division of Fish and Wildlife were made for vessels owned or operated by THOMAS REEVES or TODD REEVES.  These daily call-ins, each of which constitutes a separate overt act, reported fewer bushels of oysters than had actually been harvested on that day, and include but are not limited to the following examples of these overt acts:

| Harvest Date | # of Bushels Called in to NJDFW |
|---|---|
| 4/19/2004 | 75 |
| 4/20/2004 | 75 |
| 4/21/2004 | 75 |
| 5/6/2004 | 37 |
| 5/7/2004 | 38 |
| 6/2/2004 | 56 |
| 6/3/2004 | 70 |
| 7/14/2004 | 100 |
| 7/20/2004 | 73 |
| 7/21/2004 | 75 |
| 7/22/2004 | 76 |
| 7/23/2004 | 75 |
| 8/4/2004 | 125 |
| 8/9/2004 | 93 |

Overt Act 5:   For the harvest of oysters occurring on approximately 36 occasions from on or about April 16, 2004, through September 21, 2004, each occasion being an overt act, weekly oyster vessel harvest logs were created bearing the names of THOMAS and/or TODD REEVES.  These weekly oyster vessel harvest logs, each of which constitutes a separate overt

act, reported fewer bushels of oysters than had actually been harvested on the day indicated, and include but are not limited to the following examples of these overt acts:

| Weekly Vessel Oyster Harvest Log | | |
|---|---|---|
| **Harvest Date** | **# of Bushels Reported** | **Name Signed on Report** |
| 4/19/2004 | 75 | Thomas Reeves |
| 4/20/2004 | 75 | |
| 4/21/2004 | 75 | |
| 5/6/2004 | 37 | Todd Reeves |
| 5/7/2004 | 38 | |
| 6/2/2004 | 56 | Thomas Reeves |
| 6/3/2004 | 70 | Thomas Reeves Todd Reeves |
| 7/14/2004 | 100 | Todd Reeves Thomas Reeves |
| 7/20/2004 | 73 | Tom Reeves |
| 7/21/2004 | 75 | |
| 7/22/2004 | 76 | |
| 7/23/2004 | 75 | Thomas Reeves |
| 8/4/2004 | 125 | Thomas Reeves Todd Reeves |
| 8/9/2004 | 93 | Thomas Reeves Todd Reeves |

<u>Overt Act 6:</u>    For the harvest of oysters occurring on approximately 36 occasions from on or about April 16, 2004, through September 21, 2004, each occasion being an overt act, oyster dealer weekly reports for REEVES BROTHERS were created bearing the names of THOMAS and/or TODD REEVES.  These oyster dealer weekly reports, each of which constitutes a separate overt act, reported fewer bushels of oysters than had actually been harvested and landed on the day indicated, and include but are not limited to the following examples of these overt acts:

| Oyster Dealer Weekly Report |
|---|

| Harvest Date | # of Bushels Reported | Name Signed on Report |
|---|---|---|
| 4/19/2004 | 75 | Thomas Reeves |
| 4/20/2004 | 75 | Thomas Reeves |
| 4/21/2004 | 75 | Thomas Reeves |
| 5/6/2004 | 37 | Todd Reeves |
| 5/7/2004 | 38 | Todd Reeves |
| 6/2/2004 | 56 | Tom Reeves |
| 6/3/2004 | 70 | Todd Reeves<br>Tom Reeves |
| 7/14/2004 | 100 | Thomas Reeves<br>Todd Reeves |
| 7/20/2004 | 73 | Thomas Reeves |
| 7/21/2004 | 75 | Thomas Reeves |
| 7/22/2004 | 76 | Thomas Reeves |
| 7/23/2004 | 75 | Thomas Reeves |
| 8/4/2004 | 125 | Thomas Reeves<br>Todd Reeves |
| 8/9/2004 | 93 | Thomas Reeves<br>Todd Reeves |

Overt Act 7:   For the harvest of oysters occurring on approximately 36 occasions from on or about April 16, 2004, through September 21, 2004, each occasion being an overt act, REEVES BROTHERS invoices for HARBOR HOUSE for the sale of oysters were created. These invoices, each of which constitutes a separate overt act, recorded fewer bushels of oysters than had actually been sold to HARBOR HOUSE, and include but are not limited to the following examples of these overt acts:

| Harvest Date | # of Bushels on Reeves Brothers Invoice to Harbor House |
|---|---|
| 4/19/2004 | 75 |
| 4/20/2004 | 75 |
| 4/21/2004 | 75 |
| 5/6/2004 | 37 |
| 5/7/2004 | 38 |
| 6/2/2004 | 57 |

| 6/3/2004 | 70 |
|---|---|
| 7/14/2004 | 100 |
| 7/20/2004 | 148 |
| 7/21/2004 | |
| 7/22/2004 | 151 |
| 7/23/2004 | |
| 8/4/2004 | 125 |
| 8/9/2004 | 93 |

Overt Act 8:    For the harvest of oysters occurring on approximately 26 occasions from

on or about April 19, 2004, through September 21, 2004, HARBOR HOUSE created entries in a

record of oyster purchases by HARBOR HOUSE that indicated fewer bushels of oysters were

purchased from the REEVES BROTHERS than had actually been purchased and paid for by

HARBOR HOUSE.  These entries, each of which constitutes a separate overt act, and include

but are not limited to the following examples of these overt acts:

| Harvest Date | Harbor House Oyster Log Amount |
|---|---|
| 4/19/2004 | 75 |
| 4/20/2004 | 75 |
| 4/21/2004 | 75 |
| 7/20/2004 | 148 |
| 7/21/2004 | |
| 7/22/2004 | 151 |
| 7/23/2004 | |
| 8/4/2004 | 125 |
| 8/9/2004 | 93 |

Overt Act 9:    On or about April 29, 2004, the vessel *Martha Meerwald* landed

approximately 100 bushels of oysters.

Overt Act 10:    On or about May 13, 2004, the vessel *Linda W* landed approximately 100

to 105 bushels of oysters.

Overt Act 11: On or about May 13, 2004 the vessel *Janet R* landed approximately 60 to 65 bushels of oysters.

Overt Act 12: On or about May 13, 2004, a fax was sent to BRYAN at HARBOR HOUSE from the REEVES BROTHERS that indicated REEVES BROTHERS sent a blank pad of invoices to HARBOR HOUSE and blank oyster tags. Attached to the fax was a REEVES BROTHERS document that falsely recorded the number of bushels of oysters harvested and handled by the REEVES BROTHERS during April and May 2004.

Overt Act 13: On or about May 21, 2004, HARBOR HOUSE sent a New Jersey Division of Fish and Wildlife officer invoices for HARBOR HOUSE purchases of oysters from REEVES BROTHERS in April and May that falsely indicated the sale of fewer oysters than HARBOR HOUSE had actually purchased from REEVES BROTHERS.

Overt Act 14: On or about August 23, 2004, RENEE REEVES sent a facsimile to MELONEY containing two invoices for same sale of oysters by REEVES BROTHERS to HARBOR HOUSE, one of which falsely indicated the amount of oysters sold to HARBOR HOUSE, the other indicated the actual amount of oysters sold to HARBOR HOUSE on that day.

Overt Act 15: On or about October 27, 2004, RENEE REEVES sent a facsimile to MELONEY for the sale of oysters to HARBOR HOUSE. The harvest of these oysters had not been reported to the state of New Jersey.

Overt Act 16: On or about November 10, 2004, RENEE REEVES sent a facsimile to BRYAN at HARBOR HOUSE with a message that the fax contained "our records 6-1-04 until the end of season. This is what we have given the New Jersey Dept. of Health. . . ." That facsimile included a REEVES BROTHERS record that falsely recorded the number of bushels of

oysters that had been harvested and handled by REEVES BROTHERS from June 1, 2004 through September 22, 2004.

Overt Act 17: On or about April 15, 2005, TODD REEVES executed a document acknowledging the terms and conditions and individual harvest allotment of oysters for the 2005 direct market harvest season in the Delaware Bay.

Overt Act 18: REEVES BROTHERS applied for and received an oyster dealer license from the State of New Jersey for the period August 2004 to August 2005.

Overt Act 19: For the harvest of oysters occurring on approximately 15 occasions from on or about August 25, 2005, through on or about October 6, 2005, each occasion being an overt act, call-ins to New Jersey Division of Fish and Wildlife were made for vessels owned or operated by THOMAS REEVES or TODD REEVES. These call-ins, each of which constitutes a separate overt act, reported fewer bushels of oysters than had actually been harvested on that day.

Overt Act 20: For the harvest of oysters occurring on approximately 11 occasions from on or about August 25, 2005, through on or about September 30, 2005, each occasion being an overt act, weekly oyster vessel harvest logs were created bearing the names of THOMAS and/or TODD REEVES. These weekly oyster vessel harvest logs, each of which constitutes a separate overt act, reported fewer bushels of oysters than had actually been harvested on the day indicated.

Overt Act 21: For the harvest of oysters occurring on approximately 11 occasions from on or about August 25, 2005, through on or about September 30, 2005, each occasion being an overt act, oyster dealer weekly reports for REEVES BROTHERS were created bearing the names of THOMAS and/or TODD REEVES. These oyster dealer weekly reports, each of which

constitutes a separate overt act, reported fewer bushels of oysters than had actually been harvested and landed on the day indicated.

Overt Act 22: For the harvest of oysters occurring on approximately 15 occasions from on or about August 25, 2005, through on or about October 6, 2005, each occasion being an overt act, REEVES BROTHERS invoices for HARBOR HOUSE for the sale of oysters were created. These invoices, each of which constitutes a separate overt act, recorded fewer bushels of oysters than had actually been sold to HARBOR HOUSE

Overt Act 23: On or about April 4, 2006, TODD REEVES executed a document acknowledging the terms and conditions and individual harvest allotment of oysters for the 2006 direct market harvest season in the Delaware Bay.

Overt Act 24: On or about April 4, 2006, THOMAS REEVES executed a document acknowledging the terms and conditions and individual harvest allotment of oysters for the 2006 direct market harvest season in the Delaware Bay.

Overt Act 25: REEVES BROTHERS applied for and received a oyster dealer license from the State of New Jersey for the period August 2005 to August 2006.

Overt Act 26: For the harvest of oysters occurring on approximately 57 occasions from on or about April 11, 2006, through October 3, 2006, each occasion being an overt act, call-ins to New Jersey Division of Fish and Wildlife were made for vessels owned or operated by THOMAS REEVES or TODD REEVES. These call-ins, each of which constitutes a separate overt act, reported fewer bushels of oysters than had actually been harvested on that day, and include but are not limited to the following examples of these overt acts:

| Harvest Date | # of Bushels Called in to NJDFW |
|---|---|
| 4/11/2006 | 75 |
| 4/12/2006 | 50 |

| 4/13/2006 | 50 |
|-----------|----|
| 4/14/2006 | 60 |
| 4/17/2006 | 50 |
| 8/1/2006 | 79 |
| 8/3/2006 | 57 |
| 8/10/2006 | 51 |
| 8/15/2006 | 84 |
| 8/16/2006 | 63 |
| 8/17/2006 | 75 |
| 9/12/2006 | 70 |
| 9/13/2006 | 73 |
| 9/15/2006 | 65 |
| 9/18/2006 | 86 |

Overt Act 27:  For the harvest of oysters occurring on approximately 57 occasions from

on or about April 11, 2006, through October 3, 2006, each occasion being an overt act, weekly

oyster vessel harvest logs were created bearing the names of THOMAS and/or TODD REEVES.

These weekly oyster vessel harvest logs, each of which constitutes a separate overt act, reported

fewer bushels of oysters than had actually been harvested on the day indicated, and include but

are not limited to the following examples of these overt acts:

| Weekly Vessel Oyster Harvest Log | | |
|---|---|---|
| **Harvest Date** | **# of Bushels Reported** | **Name Signed on Report** |
| 4/11/2006 | 75 | T. Reeves |
| 4/12/2006 | 50 | |
| 4/13/2006 | 50 | |
| 4/14/2006 | 60 | |
| 4/17/2006 | 50 | Todd Reeves |
| 8/1/2006 | 79 | T. Reeves |
| 8/3/2006 | * | |
| 8/10/2006 | 51 | Thomas Reeves |
| 8/15/2006 | 84 | Thomas Reeves |
| 8/16/2006 | 63 | |
| 8/17/2006 | 75 | |
| 9/12/2006 | 70 | Thomas Reeves |

| 9/13/2006 | 73 | |
| 9/15/2006 | 65 | |
| 9/18/2006 | 86 | Todd Reeves |

Overt Act 28:  For the harvest of oysters occurring on approximately 57 occasions from

on or about April 11, 2006, through October 3, 2006, each occasion being an overt act, oyster

dealer weekly reports for REEVES BROTHERS were created bearing the names of THOMAS

and/or TODD REEVES.  These oyster dealer weekly reports, each of which constitutes a

separate overt act, reported fewer bushels of oysters than had actually been harvested and landed

on the day indicated, and include but are not limited to the following examples of these overt

acts:

| Oyster Dealer Weekly Report | | |
| --- | --- | --- |
| Harvest Date | # of Bushels Reported | Name Signed on Report |
| 4/11/2006 | 75 | T. Reeves |
| 4/12/2006 | 50 | T. Reeves |
| 4/13/2006 | 50 | T. Reeves |
| 4/14/2006 | 60 | T. Reeves |
| 4/17/2006 | 50 | T. Reeves |
| 8/1/2006 | 79 | Tom Reeves |
| 8/3/2006 | 57 | Tom Reeves |
| 8/10/2006 | 51 | T. Reeves |
| 8/15/2006 | 84 | T. Reeves |
| 8/16/2006 | 63 | T. Reeves |
| 8/17/2006 | 75 | T. Reeves |
| 9/12/2006 | 70 | T. Reeves |
| 9/13/2006 | 73 | T. Reeves |
| 9/15/2006 | 65 | T. Reeves |
| 9/18/2006 | 86 | T. Reeves |

Overt Act 29:  For the harvest of oysters occurring on approximately 57 occasions from

on or about April 11, 2006, through October 3, 2006, each occasion being an overt act, REEVES

BROTHERS invoices for HARBOR HOUSE for the sale of oysters were created. These invoices, each of which constitutes a separate overt act, recorded fewer bushels of oysters than had actually been sold to HARBOR HOUSE, and include but are not limited to the following examples of these overt acts:

| Harvest Date | # of Bushels on Reeves Brothers Invoice to Harbor House |
|---|---|
| 4/11/2006 | 75 |
| 4/12/2006 | 50 |
| 4/13/2006 | 50 |
| 4/14/2006 | 60 |
| 4/17/2006 | 50 |
| 8/1/2006 | 79 |
| 8/3/2006 | 57 |
| 8/10/2006 | 51 |
| 8/15/2006 | 84 |
| 8/16/2006 | 63 |
| 8/17/2006 | 75 |
| 9/12/2006 | 70 |
| 9/13/2006 | 73 |
| 9/15/2006 | 65 |
| 9/18/2006 | 86 |

Overt Act 30:  For the harvest of oysters occurring on approximately 49 occasions from on or about April 11, 2006, through October 3, 2006, HARBOR HOUSE created entries in a record of oyster purchases by HARBOR HOUSE that indicated fewer bushels of oysters were purchased from the REEVES BROTHERS than had actually been purchased and paid for.  These entries, each of which constitutes a separate overt act, and include but are not limited to the following examples of these overt acts:

| Harvest Date | Harbor House Oyster Log Amount |
|---|---|
| 4/11/2006 | 75 |

| | |
|---|---|
| 4/12/2006 | 50 |
| 4/13/2006 | 50 |
| 4/14/2006 | 60 |
| 4/17/2006 | 50 |
| 5/24/2006 | 54 |
| 5/25/2006 | 64 |
| 5/26/2006 | 54 |
| 8/1/2006 | 79 |
| 8/3/2006 | 57 |
| 8/10/2006 | 51 |
| 8/15/2006 | 84 |
| 8/16/2006 | 63 |
| 8/17/2006 | 75 |
| 9/12/2006 | 70 |
| 9/13/2006 | 73 |
| 9/15/2006 | 65 |
| 9/18/2006 | 86 |

Overt Act 31:  Prior to and on or about November 13, 2006, REEVES BROTHERS created a record of oysters that had been harvested and handled by the business which falsely recorded the number of bushels.

Overt Act 32:  On or about November 13, 2006, TODD REEVES sent a facsimile to BRYAN that attached a REEVES BROTHERS document which falsely recorded the number of bushels of oysters that had been harvested and handled by REEVES BROTHERS from April 11, 2006, through October 11, 2006.  The facsimile message indicates the attached records should match the slips sent two weeks ago, and that the rest of the slips would be sent.

Overt Act 33:   On or about April 2, 2007, TODD REEVES executed a document acknowledging the terms and conditions and individual harvest allotment of oysters for the 2007 direct market harvest season in the Delaware Bay.

Overt Act 34:   REEVES BROTHERS applied for and received a oyster dealer license from the State of New Jersey for the period August 15, 2006, to August 15, 2007.

- 20 -

Overt Act 35: REEVES BROTHERS applied for and received a oyster dealer license from the State of New Jersey for the period August 15, 2007, to August 15, 2008.

Overt Act 36: For the harvest of oysters occurring on approximately 63 occasions from on or about April 19, 2007, through October 4, 2007, each occasion being an overt act, call-ins to New Jersey Division of Fish and Wildlife were made for vessels owned or operated by THOMAS REEVES or TODD REEVES. These call-ins, each of which constitutes a separate overt act, reported fewer bushels of oysters than had actually been harvested on that day, and include but are not limited to the following examples of these overt acts:

| Harvest Date | # of Bushels Called in to NJDFW |
| --- | --- |
| 6/6/2007 | 70 |
| 7/18/2007 | 100 |
| 7/19/2007 | 100 |
| 8/13/2007 | 84 |
| 8/14/2007 | 83 |
| 8/15/2007 | 87 |
| 8/16/2007 | 100 |
| 9/10/2007 | 85 |
| 9/12/2007 | 70 |
| 9/13/2007 | 79 |
| 9/14/2007 | 90 |
| 10/4/2007 | 76 |

Overt Act 37: For the harvest of oysters occurring on approximately 63 occasions from on or about April 19, 2007, through October 4, 2007, each occasion being an overt act, weekly oyster vessel harvest logs were created bearing the names of THOMAS and/or TODD REEVES. These weekly oyster vessel harvest logs, each of which constitutes a separate overt act, reported fewer bushels of oysters than had actually been harvested on the day indicated, and include but are not limited to the following examples of these overt acts:

- 21 -

| Weekly Vessel Oyster Harvest Log | | |
|---|---|---|
| Harvest Date | # of Bushels Reported | Name Signed on Report |
| 6/6/2007 | 70 | Tom Reeves |
| 7/18/2007 | 100 | Todd C. Reeves |
| 7/19/2007 | 100 | |
| 8/13/2007 | 84 | Thomas Reeves |
| 8/14/2007 | 83 | |
| 8/15/2007 | 87 | |
| 8/16/2007 | 100 | |
| 9/10/2007 | 85 | Todd Reeves |
| 9/12/2007 | 70 | |
| 9/13/2007 | 79 | |
| 9/14/2007 | 90 | |
| 10/4/2007 | 76 | Todd Reeves |

Overt Act 38:  For the harvest of oysters occurring on approximately 63 occasions from on or about April 19, 2007, through October 4, 2007, each occasion being an overt act, oyster dealer weekly reports for REEVES BROTHERS were created bearing the names of THOMAS and/or TODD REEVES.  These oyster dealer weekly reports, each of which constitutes a separate overt act, reported fewer bushels of oysters than had actually been harvested and landed on the day indicated, and include but are not limited to the following examples of these overt acts:

| Oyster Dealer Weekly Report | | |
|---|---|---|
| Harvest Date | # of Bushels Reported | Name Signed on Report |
| 6/6/2007 | 70 | Thomas Reeves |
| 7/18/2007 | 100 | Thomas Reeves |
| 7/19/2007 | 100 | Thomas Reeves |
| 8/13/2007 | 84 | Thomas Reeves |
| 8/14/2007 | 83 | Todd Reeves |
| 8/15/2007 | 87 | Todd Reeves |
| 8/16/2007 | 100 | Todd Reeves |
| 9/10/2007 | 85 | Todd Reeves |

| 9/12/2007 | 70 | Thomas Reeves |
| 9/13/2007 | 79 | T Reeves |
| 9/14/2007 | 90 | T Reeves |
| 10/4/2007 | 76 | Todd Reeves |

Overt Act 39: For the harvest of oysters occurring on approximately 63 occasions from on or about April 19, 2007, through October 4, 2007, each occasion being an overt act, REEVES BROTHERS invoices for HARBOR HOUSE for the sale of oysters were created. These invoices, each of which constitutes a separate overt act, recorded fewer bushels of oysters than had actually been sold to HARBOR HOUSE, and include but are not limited to the following examples of these overt acts:

| Harvest Date | # of Bushels on Reeves Brothers Invoice to Harbor House |
| --- | --- |
| 6/6/2007 | 70 |
| 7/18/2007 | 100 |
| 7/19/2007 | 100 |
| 8/13/2007 | 84 |
| 8/14/2007 | 83 |
| 8/15/2007 | 87 |
| 8/16/2007 | 100 |
| 9/10/2007 | 85 |
| 9/12/2007 | 70 |
| 9/13/2007 | 79 |
| 9/14/2007 | 90 |
| 10/4/2007 | 126 |

Overt Act 40: For the harvest of oysters occurring on approximately 23 occasions from on or about August 9, 2007, through October 4, 2007, HARBOR HOUSE created entries in a record of oyster purchases by HARBOR HOUSE that indicated fewer bushels of oysters were purchased from the REEVES BROTHERS than had actually been purchased. These entries,

each of which constitutes a separate overt act, and include but are not limited to the following examples of these overt acts:

| Harvest Date | Harbor House Oyster Log Amount |
|---|---|
| 8/13/2007 | 84 |
| 8/14/2007 | 83 |
| 8/15/2007 | 87 |
| 8/16/2007 | 100 |
| 8/29/2007 | 88 |
| 8/30/2007 | 90 |
| 8/31/2007 | 85 |
| 9/10/2007 | 85 |
| 9/12/2007 | 70 |
| 9/13/2007 | 79 |
| 9/14/2007 | 90 |
| 10/4/2007 | 76 |

Overt Act 41: On or about July 18, 2007, the vessel *Martha Meerwald* landed at least 162 bushels of oysters.

Overt Act 42: On or about October 4, 2007, the vessel *Brandy Lee* landed at least 125 bushels of oysters.

Overt Act 43: On October 4, 2007, TODD REEVES called the New Jersey Division of Fish and Wildlife and reported that the vessel Brandy Lee had harvested 76 bushels of oysters.

Overt Act 44: Prior to and on or about October 5, 2007, REEVES BROTHERS created a record of oyster shipments that falsely indicated the amount of oysters harvested and which were handled by the REEVES BROTHERS during 2007.

Overt Act 45: On or about October 5, 2007 TODD REEVES gave to New Jersey Division of Fish and Wildlife officer a record of oyster shipments that falsely indicated the amount and oysters harvested and which were handled by REEVES BROTHERS during 2007.

Overt Act 46:   On or about October 5, 2007, a fax was sent from the home of TODD and RENEE REEVES to HARBOR HOUSE. That fax included at least 33 pages and at least one invoice from REEVES BROTHERS that was false.

Overt Act 47:   On or about October 5, 2007, PAMELA MELONEY and MARK BRYAN gave at least one of the faxed false REEVES BROTHERS invoices to a federal law enforcement agent.

Overt Act 48:   On or about October 5, 2007, MARK BRYAN told a federal law enforcement agent that the REEVES BROTHERS invoices he was providing on that day were from the HARBOR HOUSE files.

All in violation of Title 18, United States Code, Section 371.

**COUNT TWO**
16 U.S.C §§ 3372(d)(2) and 3373(d)(3)(A)(ii)

27.     The allegations contained above in paragraphs 1 through 4 and 6 through 15 of

the Indictment are hereby re-alleged and incorporated by reference herein.

28.     From on or about August 2, 2006, through on or about November 13, 2006,

related to shipments of fish arriving on or about the dates specified in the counts below, in the

District of New Jersey and elsewhere, the defendants,

**THOMAS REEVES,
TODD REEVES,
RENEE REEVES,
SHELLROCK, LLC. d/b/a REEVES BROTHERS,
MARK BRYAN,
PAMELA MELONEY, and
HARBOR HOUSE INC.,**

did knowingly make a false record, account, label for, and a false identification of fish or

wildlife, that is oysters, that were and were intended to be transported in interstate commerce,

having a market value greater than $350, and did engage in conduct that involved the sale and

purchase of, offer of sale and purchase of, and commission of an act with intent to sell and

purchase fish or wildlife, in that the defendants made or caused another to make records and logs

that falsely indicated the amount of oysters that had been harvested, landed, sold and purchased

by the defendants.

All in violation of Title 16, United States Code Sections 3372(d)(2) and 3373(d)(3)(A)(ii)

and Title 18, United States Code, Section 2.

- 26 -

## COUNT THREE
16 U.S.C §§ 3372(a)(2)(A) and 3373(d)(1)(B)

29.     The allegations contained above in paragraphs 1 through 4 and 6 through 15 of the Indictment are hereby re-alleged and incorporated by reference herein.

30.     From on or about August 2, 2006, through on or about October 9, 2006, in the District of New Jersey and elsewhere, the defendants,

**THOMAS REEVES,
TODD REEVES,
SHELLROCK, LLC. d/b/a REEVES BROTHERS,
MARK BRYAN, and
HARBOR HOUSE INC.**

did knowingly engage in conduct that involved the sale and purchase of, the offer of sale and purchase of, and the intent to sell and purchase fish or wildlife, that is oysters, with a market value in excess of $350, and did knowingly transport, sell, receive, acquire, and purchase said fish or wildlife in interstate commerce, knowing that said fish or wildlife was taken, possessed, and transported in violation of and in a manner unlawful under the laws and regulations of New Jersey, as set forth in paragraphs 9 through 12, specifically that is, the oysters were not reported as required, and were in excess of the amount authorized to be harvested and landed.

All in violation of Title 16, United States Code Sections 3372(a)(2)(A) and 3373(d)(1)(B) and Title 18, United States Code, Section 2.

- 27 -

## COUNT FOUR
16 U.S.C §§ 3372(d)(2) and 3373(d)(3)(A)(ii)

31.     The allegations contained above in paragraphs 1 through 4 and 6 through 15 of

the Indictment are hereby re-alleged and incorporated by reference herein.

32.     From on or about April 19, 2007, through on or about October 4, 2007, in the

District of New Jersey and elsewhere, the defendants,

**THOMAS REEVES,**
**TODD REEVES,**
**RENEE REEVES,**
**SHELLROCK, LLC. d/b/a REEVES BROTHERS,**
**MARK BRYAN,**
**PAMELA MELONEY, and**
**HARBOR HOUSE INC.,**

did knowingly make and cause to be made a false record, account, and label for, and false

identification of fish or wildlife, that is oysters, that were or were intended to be transported in

interstate commerce, having a market value greater than $350, and that involved the sale and

purchase of, offer of sale and purchase of, and commission of an act with intent to sell and

purchase fish or wildlife, in that the defendant made or caused another to make records and logs

that falsely indicated the amount of oysters that had been harvested, landed, sold and purchased

by the defendants.

All in violation of Title 16, United States Code Sections 3372(d)(2) and 3373(d)(3)(A)(ii)

and Title 18, United States Code, Section 2.

- 28 -

**COUNT FIVE**
16 U.S.C §§ 3372(a)(2)(A) and 3373(d)(1)(B)

33.     The allegations contained above in paragraphs 1 through 4 and 6 through 15 of the Indictment are hereby re-alleged and incorporated by reference herein.

34.     From on or about April 19, 2007, through on or about October 4, 2007, in the District of New Jersey and elsewhere, the defendants,

**THOMAS REEVES,**
**TODD REEVES,**
**SHELLROCK, LLC. d/b/a REEVES BROTHERS,**
**MARK BRYAN, and**
**HARBOR HOUSE INC.**

did knowingly engage in conduct that involved the sale and purchase of, the offer of sale and purchase of, and the intent to sell and purchase fish or wildlife, that is oysters, with a market value in excess of $350, and did knowingly transport, sell, receive, acquire, and purchase said fish or wildlife in interstate commerce, knowing that said fish or wildlife were taken, possessed, and transported in violation of and in a manner unlawful under the laws and regulations of New Jersey, as set forth in paragraphs 9 through 12, specifically that is, the oysters were not reported as required, and were in excess of the amount authorized to be harvested and landed.

All in violation of Title 16, United States Code Sections 3372(a)(2)(A) and 3373(d)(1)(B) and Title 18, United States Code, Section 2.

- 29 -

## COUNT SIX
18 U.S.C. §1519

35.     The allegations contained above in paragraphs 1 through 2, 4, and 9 through 15 of the Indictment are hereby re-alleged and incorporated by reference herein.

36.     From on or about August 2, 2006, and continuing through on or about October 13, 2006, in the District of New Jersey and elsewhere, the defendants,

**THOMAS REEVES,
TODD REEVES,
SHELLROCK, LLC. d/b/a REEVES BROTHERS,**

did knowingly alter, mutilate, conceal, cover up, falsify, and make false entries in a record, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter, and in relation to and in contemplation of such a matter, within the jurisdiction of a department or agency of the United States, in that the defendants did maintain a record of their oyster transactions required by federal regulations that was false.

All in violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT SEVEN
18 U.S.C. §1519

37.     The allegations contained above in paragraphs 6 through 15 of the Indictment are hereby re-alleged and incorporated by reference herein.

38.     From on or about August 2, 2006, and continuing through on or about October 3, 2006, in the District of New Jersey and elsewhere, the defendants,

**MARK BRYAN,**
**PAMELA MELONEY, and**
**HARBOR HOUSE INC.**

did knowingly alter, mutilate, conceal, cover up, falsify, and make false entries in a record, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter, and in relation to and in contemplation of such a matter, within the jurisdiction of a department or agency of the United States, in that the defendants did maintain a record of their oyster transactions required by federal regulations that was false.

All in violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT EIGHT
18 U.S.C. §1519

39.    The allegations contained above in paragraphs 1 through 2, 4, and 9 through 15

Indictment are hereby re-alleged and incorporated by reference herein.

40.    From on or about April 9, 2007, through on or about October 5, 2007, in the

District of New Jersey and elsewhere, the defendants,

**THOMAS REEVES,
TODD REEVES, and
SHELLROCK, LLC. d/b/a REEVES BROTHERS,**

did knowingly alter, mutilate, conceal, cover up, falsify, and make false entries in a record, with

the intent to impede, obstruct, and influence the investigation and proper administration of a

matter, and in relation to and in contemplation of such a matter, within the jurisdiction of a

department or agency of the United States, in that the defendants did maintain a record of their

oyster transactions required by federal regulations that was false.

All in violation of Title 18, United States Code, Sections 1519 and 2.

- 32 -

## COUNT NINE
18 U.S.C. §1519

41.     The allegations contained above in paragraphs 6 through 15 the Indictment are hereby re-alleged and incorporated by reference herein.

42.     From on or about August 9, 2007, through on or about October 2, 2007, in the District of New Jersey and elsewhere, the defendants,

**MARK BRYAN,
PAMELA MELONEY, and
HARBOR HOUSE INC.**

did knowingly alter, mutilate, conceal, cover up, falsify, and make false entries in a record, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter, and in relation to and in contemplation of such a matter, within the jurisdiction of a department or agency of the United States, in that the defendants did maintain a record of their oyster transactions required by federal regulations that was false, and that false invoices provided to federal law enforcement officials were altered and mutilated to conceal and cover up information.

All in violation of Title 18, United States Code, Sections 1519 and 2.

## COUNT TEN
18 U.S.C. §1505

43.     The allegations contained above in paragraphs 6 through 15 the Indictment are

hereby re-alleged and incorporated by reference herein.

44.     On or about October 5, 2007, in the District of New Jersey and elsewhere, the

defendants,

**MARK BRYAN,
PAMELA MELONEY, and
HARBOR HOUSE INC.,**

did corruptly influence, obstruct and impede, and endeavor to influence, obstruct, and impede the

due and proper administration of the law under which a pending proceeding was being had

before an agency of the United States, to wit, the National Oceanic and Atmospheric

Administration ("NOAA") of the Department of Commerce, by giving false statements and false

documents to NOAA investigators regarding the documents possessed and maintained by

HARBOR HOUSE relating to the number of bushels of oysters sold by and purchased from

REEVES BROTHERS.

All in violation of 18 United States Code Section 1505 and 2.

## COUNT ELEVEN
16 U.S.C §§ 3372(d)(2) and 3373(d)(3)(A)(ii)

45.     The allegations contained above in Paragraphs 5 and 9 through 15 of the Indictment are hereby re-alleged and incorporated by reference herein.

46.     From on or about August 2, 2006, and continuing through on or about November 2, 2006, in the District of New Jersey and elsewhere, the defendant,

### KENNETH W. BAILEY,

did knowingly make and cause to be made a false record, account, and label for, and false identification of fish or wildlife, that is oysters, that were or were intended to be transported in interstate commerce, having a market value greater than $350, and that involved the sale and purchase of, offer of sale and purchase of, and commission of an act with intent to sell and purchase fish or wildlife, in that the defendant made or caused another to make records and logs that falsely indicated the amount of oysters that had been harvested, landed, sold and purchased by the defendant.

All in violation of Title 16, United States Code Sections 3372(d)(2) and 3373(d)(3)(A)(ii) and Title 18, United States Code, Section 2.

## COUNT TWELVE
16 U.S.C §§ 3372(a)(2)(A) and 3373(d)(1)(B)

47.     The allegations contained above in paragraphs 5 and 9 through 15 of the Indictment are hereby re-alleged and incorporated by reference herein.

48.     Beginning on or about  August 2, 2006, and continuing through on or about November 2, 2006, in the District of New Jersey and elsewhere, the defendant,

### KENNETH W. BAILEY,

did knowingly engage in conduct that involved the sale and purchase of, the offer of sale and purchase of, and the intent to sell and purchase fish or wildlife, that is oysters, with a market value in excess of $350, and did knowingly transport, sell, receive, acquire, and purchase said fish or wildlife in interstate commerce, knowing that said fish or wildlife was taken, possessed, and transported in violation of and in a manner unlawful under the laws and regulations of New Jersey, as set forth in paragraphs 9 through 12, specifically that is, the oysters were not reported as required and were in excess of the amount authorized to be harvested and landed by the defendant.

All in violation of Title 16, United States Code Sections 3372(a)(2)(A) and 3373(d)(1)(B) and Title 18, United States Code, Section 2.

## COUNT THIRTEEN
16 U.S.C §§ 3372(d)(2) and 3373(d)(3)(A)(ii)

49.     The allegations contained above in paragraphs 5 through 15 of the Indictment are hereby re-alleged and incorporated by reference herein

50.     From on or about April 24, 2007, and continuing through on or about October 24, 2007, in the District of New Jersey and elsewhere, the defendants,

**KENNETH W. BAILEY,
PAMALA MELONEY, and
HARBOR HOUSE**

did knowingly make and cause to be made a false record, account, and label for, and false identification of fish or wildlife, that is oysters, that were or were intended to be transported in interstate commerce, having a market value greater than $350, and that involved the sale and purchase of, offer of sale and purchase of, and commission of an act with intent to sell and purchase fish or wildlife, in that the defendant made or caused another to make records and logs that falsely indicated the amount of oysters that had been harvested, landed, sold and purchased by the defendants.

All in violation of Title 16, United States Code Sections 3372(d)(2) and 3373(d)(3)(A)(ii) and Title 18, United States Code, Section 2.

- 37 -

**COUNT FOURTEEN**
16 U.S.C §§ 3372(a)(2)(A) and 3373(d)(1)(B)

51.    The allegations contained above in paragraphs 5 and 9 through 15 of the Indictment are hereby re-alleged and incorporated by reference herein.

52.    Beginning on or about April 24, 2007, and continuing through on or about October 24, 2007, in the District of New Jersey and elsewhere, the defendant,

**KENNETH W. BAILEY,**

did knowingly engage in conduct that involved the sale and purchase of, the offer of sale and purchase of, and the intent to sell and purchase fish or wildlife, that is oysters, with a market value in excess of $350, and did knowingly transport, sell, receive, acquire, and purchase said fish or wildlife in interstate commerce, knowing that said fish or wildlife were taken, possessed, and transported in violation of and in a manner unlawful under the laws and regulations of New Jersey, as set forth in paragraphs 9 through 12, specifically that is, the oysters were not reported as required, and were in excess of the amount authorized to be harvested and landed by the defendant.

All in violation of Title 16, United States Code Sections 3372(a)(2)(A) and 3373(d)(1)(B) and Title 18 United States Code Section 2.

## COUNT FIFTEEN
18 U.S.C. §1519

53.     The allegations contained above in paragraphs 5 and 9 through 15 of the Indictment are hereby re-alleged and incorporated by reference herein.

54.     Beginning on or about April 24, 2007, and continuing through on or about October 31, 2007, in the District of New Jersey and elsewhere, the defendant,

### KENNETH W. BAILEY,

did knowingly alter, mutilate, conceal, cover up, falsify, and make false entries in a record, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter, and in relation to and in contemplation of such a matter, within the jurisdiction of a department or agency of the United States, in that the defendant did maintain a record of their oyster transactions required by federal regulations that was false.

All in violation of Title 18, United States Code, Section §1519 and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATIONS

1.      The allegations contained above in paragraphs 1 through 14 of the Indictment are hereby re-alleged and incorporated by reference herein.

2.      Pursuant to Rule 32.2, Fed.R.Crim.P., notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 28 U.S.C. § 2461(c); and 16 U.S.C. § 3374, in the event of the defendants' conviction under Counts One through Five of this Indictment, in violation of 16 U.S.C. §§ 3372 & 3373(d)(1) and (3).

3.      As a result of the offenses charged in Counts One through Six, the defendants,

**THOMAS REEVES,**

**TODD REEVES, and**

**SHELLROCK, LLC. d/b/a REEVES BROTHERS,**

shall forfeit to the United States any and all vessels, vehicles, and other equipment used to aid in the transporting, selling, receiving, acquiring, or purchasing of wildlife in violation of 16 U.S.C. §§ 3372(a)&(d)(2), and 3373(d)(1)(B)&(d)(3), including, but not limited to the following:

a.      The vessel "Martha Meerwald," a vessel approximately 53 feet in long and 19 feet wide, bearing Coast Guard documentation number 206119, and all dredges or oyster harvesting and sorting equipment on that vessel;

b.      The vessel "Amanda Lauren," a vessel approximately 40 feet long and 12 feet wide, bearing Coast Guard documentation number 1063102, and all dredges or oyster harvesting and sorting equipment on that vessel;

c.      The vessel "Linda W," a vessel approximately 51.8 feet long and 13.4 feet wide, bearing Coast Guard documentation number 267783, and all dredges or oyster harvesting and sorting equipment on that vessel;

d.    The vessel "Louise Ockers," a vessel approximately 45.2 feet long and 15.2 feet wide, bearing Coast Guard documentation number 226334, and all dredges or oyster harvesting and sorting equipment on that vessel;

e.    The vessel "Miss Lil," a vessel approximately 42 feet long and 14.5 feet wide, bearing manufacturer hull number  PBM4503200103, and all dredges or oyster harvesting and sorting equipment on that vessel;

f.    The vessel "Janet R," a vessel approximately 40 feet long and 12 feet wide, bearing Coast Guard documentation number 1063103, and all dredges or oyster harvesting and sorting equipment on that vessel.

4.    As a result of the offenses charged in Counts Eleven through 14, the defendant,

## KENNETH W. BAILEY

shall forfeit to the United States any and all vessels, vehicles, and other equipment used to aid in the transporting, selling, receiving, acquiring, or purchasing of wildlife in violation of 16 U.S.C. §§ 3372(a)&(d)(2), and 3373(d)(1)(B)&(d)(3), including, but not limited to the following:

a.    The vessel "Crab Daddy," a vessel approximately 38 feet in long, and 16 feet wide, bearing Coast Guard documentation number 1062803, and all dredges or oyster harvesting and sorting equipment on that vessel;

b.    The vessel "Conch Emperor," a vessel approximately 50 feet long, and 17.4 feet wide bearing Coast Guard documentation number 1165549 and all dredges or oyster harvesting and sorting equipment on that vessel;

c.    The vessel "Turkey Jack," a vessel approximately 27.2 feet long, and 10.2 feet wide bearing Coast Guard documentation number 566438 and all dredges or oyster harvesting and sorting equipment on that vessel; and

- 41 -

      d.      The vessel "Beverly Rae Bailey," a vessel approximately 63.5 feet long, and 20.5

feet wide bearing Coast Guard documentation number 209125 and all dredges or oyster

harvesting and sorting equipment on that vessel

<u>Substitute Assets</u>

      5.      If any of the property described above as being subject to forfeiture, as a result of

any act or omission of any of the defendants:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third party;

      c.      has been placed beyond the jurisdiction of the court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided without

difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other

property of said defendants up to the value of the property charged with forfeiture.

A TRUE BILL

FOREPERSON

Paul J. Fishman,
United States Attorney

Ignacia Morano,
Assistant Attorney General
United States Department of Justice
By:

Wayne D. Hettenbach
Senior Trial Attorney

- 42 -

CASE NUMBER: 2009R00106

## United States District Court
### District of New Jersey

UNITED STATES OF AMERICA

v.

**THOMAS REEVES, TODD REEVES, RENEE REEVES,
SHELLROCK, LLC, d/b/a REEVES BROTHERS,
MARK BRYAN, PAMELA MELONEY,
HARBOR HOUSE INC., and KENNETH W. BAILEY**

## INDICTMENT FOR

18 U.S.C § 371;
16 U.S.C. §§ 3372(d); 3373(d)(3)(A)(ii);
16 U.S.C. §§ 3372(a)(2)(A), 3373(d)(1)(B);
18 U.S.C. § 1519; 18 U.S.C. § 1505; 18 U.S.C. § 2

A True Bill,

_____

Foreperson

**PAUL J. FISHMAN**
*U.S. ATTORNEY*
*NEWARK, NEW JERSEY*

**IGNACIA MORANO**
*ASSISTANT ATTORNEY GENERAL*
**WAYNE D. HETTENBACH**
*SENIOR TRIAL ATTORNEY*
*UNITED STATES DEPARTMENT OF JUSTICE*

*856-757-5026*